IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 07-cv-02097-WDM-KLM

JOHN MATHEWS,

    Plaintiff,

v.

DENVER NEWSPAPER AGENCY LLP,

    Defendant.

## ORDER ON MOTION TO DISMISS

Miller, J.

This case is before me on the Motion to Dismiss the Complaint (doc no 11) filed by Defendant Denver Newspaper Agency LLP (the "DNA"). Plaintiff opposes the motion. I have reviewed the parties' written arguments and the evidence submitted with their briefs. For the reasons that follow, the motion will be denied without prejudice to filing a supplemental brief on the issue of waiver.

### Background

This is an employment discrimination case arising under 42 U.S.C. § 1981 and Title VII. Plaintiff claims that the DNA demoted him based on discriminatory motives and/or as retaliation for previously complaining about discrimination by the DNA. The DNA contends that this case is barred by Plaintiff's voluntarily seeking arbitration of the same claim of discrimination pursuant to the DNA's collective bargaining agreement ("CBA"), in which the issue was thoroughly litigated. The arbitrator, the Honorable John A. Criswell, heard

testimony and reviewed exhibits relating to Plaintiff's demotion and, in a 25-page written award, concluded that the demotion did not violate the CBA and was not in violation of Title VII. Plaintiff contends that the arbitration does not bar a subsequent judicial action pursuant to *Alexander v. Gardner-Denver Co.,* 415 U.S. 36 (1974) and its progeny.

Plaintiff's complaint alleges that he is of south Indian descent and is therefore in a protected class. Complaint ¶ 3. He began his employment at the Denver Post newspaper in 1983.[1] Complaint ¶ 8. On or around July 1, 2005, Plaintiff was demoted from his position of unit supervisor, allegedly because of objectionable conduct with a female subordinate and other incidents involving subordinate employees. Complaint ¶ 11. Plaintiff denies that the conduct occurred or asserts that it was not as serious as portrayed. Complaint ¶ 12. Plaintiff asserts that he was treated differently than others in the same position who were not of Indian descent. Complaint ¶ 13. He alleges that the demotion was discriminatory and/or the result of unlawful retaliation.

The arbitration award, attached to the DNA's motion to dismiss, recites that an evidentiary hearing was held on January 27, February 7 and 8, and March 15, 2006. Arbitrator's Award ("Award"), Exhibit to Motion to Dismiss (doc no 11-2) at 1. The DNA, the Denver Mailers Union No. 8 ("Union") and Plaintiff were parties. *Id.* Barry D. Roseman, Esq., who represents Plaintiff in this action, represented the Union (and apparently Plaintiff) in the arbitration proceeding. *Id.* The issues presented to the arbitrator revolved around the Plaintiff's July 1, 2005 demotion, specifically: (1) whether,

---

[1]After the Post and a competing newspaper entered into a joint operating agreement in 2000, the DNA began handling the operations of both newspapers. Complaint ¶ 9.

under the CBA, the employer was required to have "just cause" to demote a unit supervisor; (2) assuming just cause was required, whether the employer had just cause to demote Plaintiff or was he the subject of disparate treatment; (3) whether the Plaintiff's demotion nonetheless violated the contractual provisions prohibiting discrimination. *Id*. at 2. After disposing of some preliminary issues, the arbitrator determined that the contract did not require "just cause" for a demotion. *Id*. at 10.

The arbitrator then turned to the discrimination issue. Construing the CBA's non-discrimination contract provisions and the arguments of the parties, the arbitrator determined that the parties "have treated the contract provision as doing nothing more than recognizing actions or omissions that would otherwise constitute statutory violations as also violations of their agreement, so that a contractual remedy is available to any aggrieved party, as well." Award at 12. Agreeing that this approach was appropriate, the arbitrator then explained that he would apply the law of the Tenth Circuit so that "there should be no substantial difference in result whether the decision is rendered by a trial judge sitting in Colorado or by an arbitrator hearing a case involving two parties situate in this state." *Id*. The arbitrator then reviewed the applicable standards for proving a claim of discrimination, following the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id*. at 13. He determined that, under Tenth Circuit law, discipline of other employees by different supervisors was irrelevant and did not demonstrate discriminatory intent by Plaintiff's supervisor. *Id*. at 14. After reviewing the evidence, including evidence of several complaints by employees against Plaintiff, an inappropriate telephone call to a complaining employee's home, and comparable incidents

3

involving other unit supervisors, the arbitrator determined that the Union had failed to establish a prima facie case of national origin discrimination. *Id.* at 24.

## Standard of Review

A complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). The court must accept as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to the plaintiff. *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996).

*Res judicata*, or claim preclusion, prevents a party from relitigating a claim that was or could have been the subject of a previously issued final judgment. *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005). Under Tenth Circuit law, claim preclusion applies when three elements are satisfied: (1) a final judgment on the merits in an earlier action; (2) identity of the parties in the two suits; and (3) identity of the cause of action in both suits. *Id.* A party may avoid preclusion if that party did not have a full and fair opportunity to litigate the claim in the prior suit. *Id.* An arbitration award may have preclusive effect, but this may depend on the express terms of the arbitration agreement, the custom of the trade, or other exceptions or special interests to be protected. *Id.* at 831-32 (citations omitted).

## Discussion

The DNA argues that all elements needed for res judicata are present here. First, it argues that the arbitration is a final judgment on the merits, that the parties are the same,

and that the same cause of action is at issue. The DNA further argues that Plaintiff had a full and fair opportunity to litigate. The DNA also argues extensively that the rationale of the *Gardner-Denver* line of cases do not apply here and that Plaintiff, by electing voluntary arbitration, waived his right to a federal judicial forum.

A review of the United States Supreme Court's major cases involving arbitration and an employee's ability to vindicate statutory rights in federal court is in order, as there has been significant evolution in the relevant doctrine. Whether an arbitration award pursuant to a collective bargaining contract bars a later lawsuit under Title VII was first addressed in *Gardner-Denver*. In that case, a discharged employee filed a grievance with his union which, pursuant to the governing CBA, went through a grievance process culminating in binding arbitration. Just before the matter went to arbitration, the employee alleged that his discharge was also in violation of the contract's anti-discrimination provisions. The arbitration clause of the CBA limited the arbitrator's decision to solely an interpretation of the CBA. The arbitrator found in favor of the employer, ruling that the discharge did not violate the CBA but not specifically addressing the issue of racial discrimination. The employee, after exhausting his administrative remedies, filed a complaint in federal district court, which the employer argued was precluded by the previous arbitral award.

The Supreme Court disagreed. It construed Title VII as placing primary power to ensure compliance with the federal courts and saw nothing in the statutory scheme that would foreclose an individual's right to sue. The Court distinguished the vindication of an employee's contractual rights under a CBA from individual statutory rights, both of which might be violated by the same conduct but remedies for which were complementary. The

Court held "there can be no prospective waiver of an employee's rights under Title VII" by a CBA or by resorting to an arbitral forum. 415 U.S. at 51-52. The Court also relied on numerous policy grounds for the decision, including that an arbitrator's job is to interpret a contract and the arbitrator generally does not have authority or experience to invoke public laws in resolution of the contract dispute. The Court generally concluded that Congress intended the courts, not arbitrators, to exercise final responsibility for enforcing Title VII, that arbitral procedures were generally inferior in that arbitrators were tasked to "effectuate the intent of the parties rather than the requirements of enacted legislation," that arbitrators were primarily competent in "the law of the shop, not the law of the land," and that factfinding in arbitration was not equivalent to judicial factfinding. *Id.* at 56-57.

The Supreme Court again refused to give preclusive effect to labor arbitration in civil rights litigation in *McDonald v. City of West Branch, Mich.*, 466 U.S. 284 (1984). There, after an unfavorable arbitration decision pursuant to a CBA, the plaintiff filed a civil rights lawsuit pursuant to 42 U.S.C. § 1983. The Court again rejected any rule of preclusion or estoppel, citing the principles of *Gardner-Denver*, including Congress's intent that section 1983 be judicially enforceable, the inadequacy of an arbitral forum for vindicating statutory right, the limits of an arbitrator's expertise, the possible conflict of interest where a union has control over the presentation of an individual's grievance, and the limits of arbitral factfinding. 466 U.S. at 290-292. The Court noted, however, that arbitral decisions could be given significant weight in ensuing judicial proceedings under appropriate circumstances. *Id.* at 292 n. 13.

However, the Court's view of the adequacy of arbitration was significantly revised

in *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20 (1991). In *Gilmer*, the Court held that the plaintiff was bound by his individual employment agreement requiring him to arbitrate disputes with his employer, including his statutory claim under the ADEA. "It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the [Federal Arbitration Act]." 500 U.S. at 26. Noting that suspicions of arbitration as a method of weakening statutory protections are "far out of step with our current strong endorsement of the federal statutes favoring this method of resolving disputes," the Court rejected the employee's policy objections to the adequacy of arbitral proceedings. *Id.* at 30-32. The Court then distinguished the case from *Gardner-Denver* on the following grounds: (1) the CBA cases did not involve the enforceability of an agreement to arbitrate statutory claims, but rather only contract claims; the employees had not agreed to arbitrate their statutory claims and the labor arbitrators were not authorized to resolve such claims; (2) the CBA claimants were represented by their unions, thus creating tension between collective representation and individual statutory rights; and (3) the CBA cases were not decided under the FAA. *Id.* at 25.

The Supreme Court's most recent effort at resolving the tension between *Gardner-Denver* and *Gilmer* was in *Wright v. Universal Maritime Serv. Corp.,* 525 U.S. 70 (1998). The issue in *Wright* was whether a general arbitration clause in a CBA required an employee to use the arbitration procedure for an alleged violation of the Americans with Disabilities Act. Noting that *Gilmer* established that the right to a judicial forum could be waived, the Court appeared to recognize that a CBA arbitration provision could include statutory claims, not just contract claims, if the union-negotiated waiver of employees'

7

statutory right to a judicial forum was "clear and unmistakable." *Id.* at 80-81. In *Wright*, however, the Court found no such waiver and concluded that the employee was not required to take his claim to arbitration before or instead of filing his lawsuit.

These cases demonstrate that the policy concerns expressed in *Gardner-Denver* about the adequacy of arbitration in vindicating statutory rights have largely been abandoned as a rationale for not giving preclusive effect to an arbitral award. This is also reinforced by the 1991 amendments to Title VII, which make clear Congress's approval of arbitration in civil rights litigation, thus undermining the Court's conclusion in *Gardner-Denver* that Congress intended primarily judicial resolution of discrimination claims. *See* Notes to 42 U.S.C. § 1981 ("Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including . . . arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title"). Accordingly, I agree with the DNA that Plaintiff's decision to pursue voluntary arbitration <u>could</u> constitute a waiver of his right to bring his Title VII claims in this court. *See Wiedemann v. City of Oklahoma City*, 76 Fed. Appx. 931 (10th Cir. 2003) (citing *Wright* for the proposition that a collective bargaining agreement may preclude a legal action but only if the waiver of the employee's statutory rights is clear and unmistakable).

However, I cannot make this determination from the pleadings and the DNA's motion to dismiss. Whether the award should be given preclusive is largely a matter of contract, specifically whether a waiver occurred and the scope of such a waiver. "Although res judicata and collateral estoppel usually attach to arbitration awards, they do so (if they do so) as a matter of contract rather than as a matter of law. The preclusive effect of the

8

award is as much a creature of the arbitration contract as any other aspect of the legal-dispute machinery established by such a contract." *IDS Life Ins. Co. v. Royal Alliance Assoc., Inc.,* 266 F.3d 645, 651 (7th Cir. 2001) (citations omitted). Neither party supplied the CBA and so I cannot even determine whether Plaintiff's decision to pursue arbitration was voluntary, as asserted by the DNA, or that the parties agreed that arbitration would be binding, much less that the CBA contained a clear and unmistakable waiver of Plaintiff's right to pursue his claims in federal court. Although it is clear from the arbitrator's decision that he resolved Plaintiff's claim as if it were a statutory claim, that does not necessarily mean that the arbitrator was authorized to make binding determinations of all claims arising under Title VII. I do note that Judge Criswell provided a full and fair opportunity for presentation and consideration of evidence, that his factfinding and conclusions were equivalent to that of a judicial decision, that the appropriate legal standards were applied, and that his decision was supported by the evidence. Finally, if Plaintiff can present evidence that the union had collective interests that were not aligned with Plaintiff's in the arbitration, that may provide grounds for rehearing the matter in this forum.[2]

Therefore, I cannot determine as a matter of law from the pleadings alone that Plaintiff's claims are precluded by the previous arbitration decision and will deny the DNA's motion to dismiss. However, the DNA may seek leave to file a supplemental dispositive

---

[2] In those circumstances, however, I would question whether Plaintiff's attorney, who represented the union in the arbitration, would be obliged by his ethical responsibilities to decline to represent Plaintiff in this matter.

9

motion on the issue of whether the arbitration and other provisions in the CBA contain a "clear and unmistakable" waiver of Plaintiff's right to a judicial forum.

Accordingly, it is ordered:

1. Defendant's Motion to Dismiss the Complaint [doc no 11] is denied without prejudice to filing a supplemental dispositive motion on whether the CBA contained a waiver of Plaintiff's right to a judicial forum.

DATED at Denver, Colorado, on February 1, 2008.

BY THE COURT:


s/ Walker D. Miller
United States District Judge