IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02097-WDM-KLM

JOHN MATHEWS,

    Plaintiff(s),

v.

DENVER NEWSPAPER AGENCY LLP,

    Defendant(s).
_____

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION TO COMPEL**
_____

**ORDER ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Plaintiff's Motion to Compel** [Docket No. 49; Filed June 24, 2008] ("Motion to Compel"). The Court has reviewed Defendant's Response in Opposition to Plaintiff's Motion to Compel [Docket No. 57; Filed July 14, 2008] and Plaintiff's Reply in Support of Motion to Compel [Docket No. 64; Filed July 29, 2008] and is fully advised in the premises. For the reasons set forth below, the Motion to Compel is **granted in part and denied in part.**

**I. Introduction**

Plaintiff's complaint asserts claims for discrimination based on race, national origin and/or color and retaliation, in violation of 42 U.S.C. §§ 2000e & 1981. *Complaint* [#1-2] at 4. The disputed discovery requests include Plaintiff's Interrogatory No. 2[1] and

---

[1] Interrogatory No. 2 reads:

1

Between January 22, 2001 and the present, have you received any information or allegations that any of your Unit Supervisors or Insert Machine Operators made any inappropriate statements, asked any inappropriate questions or engaged in any inappropriate conduct toward or in the presence of any of your other employees or toward or in the presence of any member of the family of any of your employees? If so, for each such allegation (other than the ones described in the Union's Arbitration Brief in FMCS Case No. 050901-05567-7, CWA Case No. P-05-010 [sic], please:

(a) Identify the Unit Supervisor or Insert Machine Operator who was claimed to have made that allegedly inappropriate statement, asked that allegedly inappropriate question and/or engaged in that allegedly inappropriate conduct;

(b) State the race and national origin of that Unit Supervisor or Insert Machine Operator;

(c) State whether, before you first became aware of that information or allegation, the Unit Supervisor or Insert Machine Operator had made a charge or complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII of the Civil rights Act of 1964;

(d) State whether, before you first became aware of that allegation, the Unit Supervisor or Insert Machine Operator had opposed any act or practice which that person claimed to discriminate against any of your employees or job applicants on account of that person's race, sex, national origin or religion;

(e) State the position held by that Unit Supervisor or Insert Machine Operator when you first received any information or allegation about his or her allegedly inappropriate statement, allegedly inappropriate question and/or allegedly inappropriate conduct;

(f) State when and how you first became aware of that information or allegation;

(g) Identify the employee(s) and/or family member(s) to whom the Unit Supervisor or Insert Machine Operator was claimed to have made that allegedly inappropriate statement, asked that allegedly inappropriate question and/or engaged in that allegedly inappropriate conduct;

(h) Describe all facts that you received from any source in connection with the information or allegation;

(i) State whether you took any disciplinary or any other action toward that Unit Supervisor or Insert Machine Operator as a result of that information or allegation or as a result of any information you received in connection with the incident(s) in which that employee had made any allegedly inappropriate statement, asked any allegedly inappropriate question and/or engaged in any allegedly inappropriate conduct;

(j) If you did not demote that unit Supervisor or Insert Machine Operator to the position of journeyman Mailer and did not terminate that person's employment as a result of that information or allegation or as a result of any information you received in connection with the incident(s) in which that employee had made any allegedly inappropriate statement, asked an allegedly inappropriate question and/or engaged in any allegedly inappropriate conduct, describe all facts that caused you to decide not to demote that employee and not to terminate that person's employment;

Requests for Production Nos. 1[2] and 3,[3] the texts of which are set forth verbatim in footnotes 1-3. *Motion to Compel* [#49] at 2-3, 6-7.

---

    (k)    Identify each person who decided to take any disciplinary or any other action toward that Unit Supervisor or Insert Machine Operator as a result of that information or allegation or as a result of any information you received in connection with the incident(s) in which that employee had made any allegedly inappropriate statement, asked an allegedly inappropriate question and/or engaged in any allegedly inappropriate conduct;

    (l)    Identify each person who participated in that decision; and

    (m)    State when you made that decision.

[2] Request for Production No. 1 reads:

    Any and all documents and all electronically stored information referenced, identified or referred to by you in preparing a response to any Interrogatory.

[3] Request for Production No. 3 reads:

    All personnel, employment and supervisory documents and electronically stored information in your possession, custody or control which you have not produced earlier, either in this case or in FMCS Case No. 050901-05567-7, CWA Case No. P-05-010, and which concern or pertain to any of the following people:

    (a)    Plaintiff;

    (b)    Ramona Sanchez;

    (c)    Isabelle Cuevas;

    (d)    Mary Trujillo;

    (e)    Sharon Allison;

    (f)    Dan Drewes;

    (g)    Don Ingram;

    (h)    Barbara O'Connor;

    (i)    Robert Price;

    (j)    Delbert Stevens;

    (k)    Mike Tafoya; and

    (l)    Mark Thull.

## II. Interrogatory No. 2

Plaintiff is employed by Defendant, although he apparently ceased working on the day when he was demoted. *Reply* [#64-3] at 2. He originally made his claims for discrimination and retaliation in a "labor-management arbitration proceeding" brought by his labor union against Defendant. *Motion to Compel* [#49] at 2. The arbitrator found against him and this litigation followed. *Response* [#57] at 1-2.

Plaintiff contends that Defendant discriminated and retaliated against him when it demoted him from the position of Unit Supervisor to the position of journeyman mailer. *Motion to Compel* [#49] at 1. Plaintiff asserts that he was treated differently from "at least eight different individuals" who committed the same misconduct as that alleged against Plaintiff. *Id.* Plaintiff further contends that he is entitled to evidence regarding Defendant's awareness of and response to other incidents of allegedly inappropriate conduct committed by employees who held the same position as Plaintiff and who were supervised by the same supervisors as Plaintiff. *Id.* at 4-5. This information is the subject of Interrogatory No. 2.

Defendant asserts that Interrogatory No. 2 is overbroad and unduly burdensome, impermissibly vague because of the undefined term "inappropriate," and has already been answered in full. *Response* [#57] at 4. Defendant points out that Plaintiff's Interrogatories define "you" as including "all agents, servants, employees and representatives" of Defendant, and thus Interrogatory No. 2 requires Defendant to "poll every employee from the past seven years to inquire about statements, questions or conduct by any other employee." Defendant asserts that such an inquiry is unduly burdensome. *Id.* Defendant further asserts that because Plaintiff seeks "any information or allegations," a response

4

"could include any rumor, innuendo, hearsay or speculation of impropriety that was never reported but was 'received' by any one of seven years [sic] worth of employees." *Id.* Defendant asserts that such an inquiry is overbroad. *Id.* Defendant argues that the lack of a definition of "inappropriate," as it is used in Interrogatory No. 2, makes it impermissibly vague. Defendant "can only imagine how vastly different every one of its employees and their family members from the past seven years might define 'any inappropriate' statements, question or contact." Defendant frets that verifying a response to Interrogatory No. 2 might "amount to a declaration that all of [its] employees' and family members' differing views of 'any inappropriate' conduct is the corporate standard." *Id.* at 4-5. Finally, Defendant contends that it has responded to Interrogatory No. 2 "in full," based on Plaintiff's clarification of the term "inappropriate" to cover "incidents similar to those that allegedly formed the basis for [Defendant's] decision to demote [Plaintiff]." Using this clarification, Defendant states that it supplemented its response by confirming that there are no similar incidents, as Plaintiff is the only employee who was "grieved by his union because he made racist remarks to an employee's teen-aged daughter." *Id.* at 5.

Plaintiff replies that in Interrogatory No. 2, he is really only seeking "information about incidents that were observed by or that were communicated to Defendant's management employees and Defendant's attorneys." *Reply* [#64] at 5. He further contends that "all he is asking is that Defendant search its records and obtain information from the small group of managerial employees who are covered by Interrogatory No. 2." *Id.* at 6. Finally, Plaintiff points out that Defendant should not be mystified by the meaning of "inappropriate," as that term was repeatedly used by Defendant throughout the underlying arbitration to describe Plaintiff's behavior and the alleged reason(s) for his

5

demotion. *Id.*

The scope of evidence that is subject to discovery under the Federal Rules of Civil Procedure is broad:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). However, the Rules also validate limitations on discovery when "the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Rule 26(b)(2)(C)(iii).

Plaintiff asserts that the evidence sought in Interrogatory No. 2 is relevant to his discrimination claim, in that he "can establish pretext through evidence that other employees, who are not members of the same protected group, were treated more leniently after having engaged in the same conduct or conduct of comparable seriousness to the conduct upon which the employer allegedly based its disciplinary decision against [him]." *See generally McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804 (1973); *McGowan v. City of Eufala,* 472 F.3d 736, 745-46 (10th Cir. 2006) (holding that evidence of disparate treatment may support an inference of pretext). I agree. Given Plaintiff's clarification of the scope of Interrogatory No. 2 in his Reply, I do not find it to be vague, or that requiring Defendant to respond would be unduly burdensome. Thus, with respect to Interrogatory No. 2, Plaintiff's Motion is **granted**. Defendant shall respond to Interrogatory No. 2 by providing information about similar incidents that were observed by or communicated to management employees who managed Unit Supervisors or Insert Machine Operators during the requested time frame. "Similar incidents" shall mean all incidents involving

alleged "inappropriate behavior" comparable to the behavior which allegedly led to Plaintiff's demotion. In order to avoid future squabbles, the Court forewarns Defendant that "similar incidents" means any incident involving *any* of the types of inappropriate behavior allegedly engaged in by Plaintiff about which evidence was presented to the arbitrator. "Racist remarks" itself is too narrow a definition, not to mention "racist remarks that led to a union grievance" and "racist remarks to an employee's teen-aged daughter that led to a union grievance." A cursory review of the record indicates that Plaintiff was accused of the following "inappropriate" conduct: making racist remarks, attempting to and having inappropriate contact with a subordinate employee's family members, failing to treat female employees with respect, yelling at female employees, insulting female employees, being unwilling to help employees, making vulgar comments to female employees, making inappropriate inquiries into another employee's schedule, leaving without permission before the end of his shift, using confidential employee information for personal reasons, and failing to accept responsibility for his behavior. *Exhibits* [#64-2] & [#64-3] at 11. At the least, Defendant shall disclose any incidents involving such behavior by Unit Supervisors or Insert Machine Operators which came to the attention of the appropriate management personnel during the requested time frame.

### III. Requests for Production Nos. 1 and 3

Regarding Request for Production No. 1, Plaintiff asserts that Defendant must supplement its response "if and to the extent that this Court orders Defendant to provide, full, complete and non-evasive responses to Interrogatory No. 2." *Motion to Compel* [#49] at 7. Defendant does not respond to this portion of Plaintiff's Motion. Given the unequivocal duty to supplement responses to requests for production set forth in Fed. R.

7

Civ. P. 26(e)(1)(A) & (B), Plaintiff's contention is correct. Further, failure to raise an objection in response to a motion to compel may be deemed a waiver of that objection. *Cardenas v. Dorel Juvenile Group, Inc.*, 232 F.R.D. 377, 380 n.15 (D. Kan. 2005). As such, the portion of the Motion to Compel which relates to Request for Production No. 1 is **granted.**

Regarding Request for Production No. 3, Plaintiff asserts that he is entitled to the entire personnel files of the employees listed "to flush out the facts concerning Defendant's disparate treatment of him, as compared to its treatment of other Unit Supervisors and Insert Machine Operators." *Motion to Compel* [#49] at 8. Defendant responds that it has produced complete disciplinary records relating to each of the listed employees, which is all Plaintiff needs to attempt to show disparate treatment. *Response* [#57] at 6. Defendant does not explain the contents of its "disciplinary records." Without specifying the types of information included in personnel files, Defendant asserts that the employees' personnel files contain "confidential information," and that Plaintiff's prior conduct elevates Defendant's concerns about the misuse of private information. *Id.* at 7. Plaintiff replies that he is seeking information about employees Ramona Sanchez, Isabelle Cuevas and Mary Trujillo "that may shed light on their credibility, whether they made false and defamatory accusations against other individuals, whether they made accusations against Plaintiff because they wanted to deflect attention away from their own disciplinary problems, or other matters that pertain to the issues in this case." As to the remaining listed individuals, Plaintiff states that he is seeking "information about other incidents not disclosed previously with respect to those individuals, about their credibility, or about other matters that may help establish whether they were treated more leniently than Plaintiff." *Reply* [#64] at 10-

8

11.

>As noted by the Tenth Circuit:
>
>[P]ersonnel files often contain sensitive personal information . . . and it is not unreasonable to be cautious about ordering their entire contents disclosed willy-nilly. Indeed, the Supreme Court has underscored that "the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery [to protect] 'a party or person from annoyance, embarrassment, [or] oppression . . . .'"

*Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 648-49 (10th Cir. 2008) (citations omitted).

On this record, the Court is left to speculate about the following: (1) what information is contained in Defendant's employees' disciplinary records; (2) what information is contained in Defendant's employees' personnel files, whether confidential or otherwise; (3) how information in the personnel files (aside from disciplinary records, which have already been produced) could shed light on employees' credibility in general; and (4) what other documents in Defendant's employees' personnel files could address "matters that pertain to the issues in this case"; and (5) what exactly those "matters" are. I have not seen either the disciplinary or the personnel files and neither party has offered enough specific information about their contents in order for me to determine the relevance of the requested information under these circumstances. Accordingly, because Plaintiff bears the burden of proof on his Motion to Compel, see *Echostar Communs. Corp. v. News Corp.*, 180 F.R.D. 391, 394 (D. Colo. 1998), the portion of the Motion which relates to Request for Production No. 3 is **denied.** Accordingly,

IT IS HEREBY **ORDERED** that the Motion to Compel is **GRANTED** with respect to Interrogatory No. 2, as modified, and Request for Production No. 1.

IT IS FURTHER **ORDERED** that the Motion is **DENIED** with respect to Request for Production No. 3.

IT IS FURTHER **ORDERED** that on or before **August 27, 2008**, Defendant shall comply with this Order and produce to Plaintiff the information and documents sought in Interrogatory No. 2 and Request for Production No. 1.

IT IS FURTHER **ORDERED** that the parties shall bear their own costs and attorneys' fees regarding the Motion.

Dated: August 13, 2008

BY THE COURT:

  s/ Kristen L. Mix
Kristen L. Mix
United States Magistrate Judge