IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 07-cv-02097-WDM-KLM

JOHN MATHEWS,

    Plaintiff,

v.

DENVER NEWSPAPER AGENCY LLP,

    Defendant.

---

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

---

Miller, J.

This case is before me on the Motion for Summary Judgment (doc no 74) filed by Defendant Denver Newspaper Agency LLP (the "DNA") and Plaintiff's Motion for Partial Summary Judgment (doc no 75). I have reviewed the parties' written arguments and the evidence submitted with their briefs. For the reasons that follow, Defendant's motion will be granted and Plaintiff's motion will be denied.

<u>Background</u>

This is an employment discrimination case arising under 42 U.S.C. § 1981 and Title VII. Plaintiff, who is of south Indian descent, claims that the DNA demoted him based on discriminatory motives and/or as retaliation for previously complaining about discrimination by the DNA. While at the DNA, Plaintiff was a member of the Denver Mailers Union No. 8 ("Union"). The matter was previously submitted to arbitration pursuant to the DNA's collective bargaining agreement ("CBA"), in which the issue was thoroughly litigated. The arbitrator, the Honorable John A. Criswell, heard testimony and reviewed exhibits relating

to Plaintiff's demotion and, in a 25-page written award, concluded that the demotion did not violate the CBA and was not in violation of Title VII. See Arbitrator's Award, Exh. A-1 to DNA Motion for S.J. (doc no 74-3). I declined to give that ruling preclusive effect at the pleadings stage and therefore denied without prejudice the DNA's motion to dismiss. See Order on Motion to Dismiss (doc no 26).

Plaintiff began his employment at the Denver Post newspaper in 1983.[1] In 2005, Plaintiff was working as a unit supervisor at the DNA's packaging center, where sections of newspapers are inserted and bundled for delivery. On June 20, 2005, the union submitted a grievance on behalf of a subordinate alleging inappropriate behavior by Plaintiff. After investigation, Plaintiff's supervisor demoted Plaintiff on or around July 1, 2005 from his supervisory position based on that incident as well as other complaints from subordinate employees. Plaintiff denied that the conduct occurred or asserts that it was not as serious as portrayed. Plaintiff alleges that he was treated differently than others in the same position who were not of Indian descent.

Plaintiff apparently stopped working before or on the day of his demotion, submitting a doctor's certification that he could not work. Plaintiff thereafter applied for disability benefits with the Social Security Administration ("SSA"), alleging disability beginning June 11, 2005. On August 26, 2007, an administrative law judge ("ALJ") with the SSA issued a decision finding that Plaintiff had been completely and totally disabled from performing his job beginning on June 11, 2005. SSA Decision, Ex. A-6 to DNA Motion for S.J. (doc

---

[1]After the Post and a competing newspaper entered into a joint operating agreement in 2000, the DNA began handling the operations of both newspapers. Complaint ¶ 9.

no 74-8). The ALJ found that Plaintiff had a severe combination of impairments from a bulging disc of the cervical spine and an affective disorder. *Id.* at 3. The ALJ found specifically that Plaintiff "has a severe restriction in the ability to carry out daily activities, constriction of interests, and the ability to carry out instructions, respond appropriately to supervision, perform repetitive tasks, make independent judgment, and perform under stress." *Id.* at 4.

The DNA asserts numerous grounds for summary judgment, including that Plaintiff's voluntary pursuit of arbitration amounted to a waiver of his right to litigate his claims in judicial forum, that Plaintiff's disability precludes him from establishing that he is qualified for the position from which he was demoted, that Plaintiff cannot establish a prima facie case of retaliation, and that he cannot demonstrate that the DNA's decision to demote him was pretextual. Plaintiff seeks summary judgment on one of the DNA's affirmative defenses, that the arbitration award precludes judicial determination of the discrimination and retaliation claims.

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart*

*Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id.*

A plaintiff alleging employment discrimination may prove intentional discrimination by direct or indirect evidence. In the absence of direct evidence, the analysis set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802-804 (1973), provides the framework for assessing indirect, or circumstantial, evidence. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000). Under this analysis, the plaintiff bears the initial burden of presenting a *prima facie* case of discrimination. *Kendrick*, 220 F.3d at 1226. The essential purpose of the *prima facie* test is to eliminate "the most common nondiscriminatory reasons for the plaintiff's rejection." *Id.* at 1227 (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981)). *See also St. Mary's Honor Center*, 509 U.S. at 506 (*prima facie* case "in effect creates a presumption that the employer unlawfully discriminated against the employee") (quoting *Burdine*, 450 U.S. at 254) (alteration in quoted material). If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action. *Kendrick*, 220 F.3d at 1226 (quoting *McDonnell Douglas*, 411 U.S. at 802). If the defendant presents such a reason, the plaintiff bears the "ultimate burden" of establishing that these proffered reasons are a pretext for unlawful discrimination. *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1167 (10th Cir. 2000).

To establish a prima facie case of discriminatory demotion, a plaintiff must provide evidence, *inter alia*, that he or she is qualified for the position at issue. *Garrison v. Gambro, Inc.*, 428 F.3d 933, 937 (10th Cir. 2005). To establish a prima facie case of retaliation, Title

VII plaintiffs must show that: (1) they engaged in protected opposition to discrimination; (2) that a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection exists between the protected activity and the adverse employment action. *Somoza v. University of Denver*, 513 F.3d 1206, 1212 (10th Cir. 2008).

### Discussion

1. Waiver and estoppel

The DNA argues that Plaintiff's full participation in arbitration pursuant to the CBA, in which the contract's anti-discrimination clause was treated as incorporating federal statute, amounted to a waiver of Plaintiff's right to seek a judicial remedy here. Because this matter is presented now on a motion for summary judgment, rather than a motion to dismiss, and in light of the evidence submitted by the parties, I will address the issue on the merits. Significantly, the United States Supreme Court has recently addressed the issue of waiver in considering the enforceability of a clause in a CBA which requires arbitration of an individual's statutory civil rights complaints. *14 Penn Plaza LLC v. Pyett*, 129 S. Ct. 1456 (2009). The Court in *Pyett* also clarified the holding of *Alexander v. Gardner-Denver*, 415 U.S. 36 (1974), which was central to my ruling on the motion to dismiss.

The CBA sets forth a dispute resolution procedure, the final step of which is binding arbitration. CBA, Art. XIII, Exh. A to Plaintiff's Brief in Support of Motion for Partial S.J. (doc no 76-2). The DNA provides undisputed evidence that union employees are not required to arbitrate their statutory discrimination claims under the CBA but rather may directly pursue their administrative and judicial remedies. Plaintiff himself previously filed a discrimination lawsuit in federal court without seeking relief under the CBA's grievance and arbitration process. In this matter, Plaintiff declined to use a union representative to handle

the arbitration but rather retained and paid his own counsel, who generally worked independently of the union in preparing and presenting Plaintiff's case. As previously noted, the matter was fully litigated in an arbitration hearing and the dispute was resolved under prevailing Tenth Circuit and other applicable law regarding statutory discrimination claims.

The DNA argues that under *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1149 (10th Cir. 2007), a party cannot fully participate in an arbitration without objection and then seek to set aside an adverse decision by challenging the arbitrator's authority to render that decision in a separately filed lawsuit. In response, Plaintiff essentially repeats his argument from his opposition to the motion to dismiss that the *Gardner-Denver* line of cases do not permit a CBA arbitration to preclude later court litigation of a statutory right.

In *Gardner-Denver,* a discharged employee filed a grievance with his union which, pursuant to the governing CBA, went through a grievance process culminating in binding arbitration. Just before the matter went to arbitration, the employee alleged that his discharge was also in violation of the contract's anti-discrimination provisions. The arbitration clause of the CBA limited the arbitrator's decision to solely an interpretation of the CBA. The arbitrator found in favor of the employer, ruling that the discharge did not violate the CBA but not specifically addressing the issue of racial discrimination. The employee, after exhausting his administrative remedies, filed a complaint in federal district court, which the employer argued was precluded by the previous arbitral award.

The Supreme Court disagreed. It construed Title VII as placing primary power to ensure compliance with the federal courts and saw nothing in the statutory scheme that would foreclose an individual's right to sue. The Court distinguished the vindication of an

6

employee's contractual rights under a CBA from individual statutory rights, both of which might be violated by the same conduct but remedies for which were complementary. The Court held "there can be no prospective waiver of an employee's rights under Title VII" by a CBA or by resorting to an arbitral forum. 415 U.S. at 51-52. The Court also relied on numerous policy grounds for the decision; as I previously noted in my Order on Motion to Dismiss, many of these rationales have since been discarded in more recent cases. Nonetheless, I concluded that dismissal pursuant to *res judicata* was not appropriate given that the case was at the pleadings stage and in light of the tension between the *Gardner-Denver* line of cases and more recent jurisprudence generally permitting arbitration of statutory anti-discrimination claims.

The Supreme Court has just addressed some of these issues in *Pyett.* The question presented in *Pyett* was whether a provision in a CBA that requires union members to arbitrate claims arising under the Age Discrimination in Employment Act ("ADEA") is enforceable. The Court held that the arbitration requirement must be honored unless the ADEA itself removed that particular class of grievances from the freedom to contract provided by the National Labor Relations Act ("NLRA"). *Pyett,* 129 S. Ct. at 1465. After noting that the Court has previously recognized that ADEA claims may be arbitrated pursuant to individual employment agreements[2], the decision goes on to conclude that "[n]othing in the law suggests a distinction between the status of arbitration agreements signed by an individual employee and those agreed to by a union representative." *Id.* A key clarification in the analysis is the difference between waiving a substantive statutory

---

[2]It is also well established that Title VII claims are arbitrable. *See, e.g., Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482 (10th Cir.1994).

right under the ADEA and waiving the right to have a case heard in a judicial forum. *Id.* at 1465, 1469.

The Court then examined whether enforcement of the CBA's arbitration provision was prevented by the *Gardner-Denver* line of cases. *Id.* at 1466-68. The Court made clear that the basic issue in *Gardner-Denver* was whether the CBA covered statutory claims; because the CBA in that case did not, the plaintiff's arbitration of his grievance did not preclude a subsequent judicial proceeding. "*Gardner-Denver* and its progeny thus do not control the outcome where, as is the case here, the collective-bargaining agreement's arbitration provision expressly covers both statutory and contractual discrimination claims." *Id.* at 1469. The Court then disavowed much of the dicta in the *Gardner-Denver* that expressed skepticism regarding the adequacy of arbitration for protecting statutory rights. *Id.* at 1469-73. The Court also clarified that the key phrase in *Gardner-Denver* that "there can be no prospective waiver of an employee's rights under Title VII" by a CBA or by resorting to an arbitral forum concerns an employee's substantive rights, not his or her right to have the claims heard in a judicial forum. *Id.* at 1469 ("The [*Gardner-Denver*] Court was correct in concluding that federal anti-discrimination rights may not be prospectively waived . . . but it confused an agreement to arbitrate those statutory claims with a prospective waiver of the substantive right.").

The anti-discrimination clause in the CBA here provides, "The Employer and the Union acknowledge continuation of their policies of no discrimination against employees and applicants on the basis of age, sex, race, religious beliefs, color, national origin or disability in accordance with and as required by applicable state and federal law." CBA Art. II ¶ 11, Exh. A to Plaintiff's Brief in Support of Motion for Partial S.J. (doc no 76-2). As

8

noted by the arbitrator in his award, "Both parties . . . have treated the contract [anti-discrimination] provision as doing nothing more than recognizing actions or omissions that would otherwise constitute statutory violations as also violations of their agreement, so that a contractual remedy is available to any aggrieved party, as well." Arbitrator's Award at 12, Exh. A-1 to DNA's Motion for S.J. (doc no 74-3). Under the reasoning of the Supreme Court in *Pyett*, because the parties recognized that the CBA's arbitration agreement covered Plaintiff's statutory claims, I conclude that *Gardner-Denver* does not preclude me from finding that Plaintiff waived his right to seek a judicial remedy by voluntarily pursuing arbitration under the CBA and that his discrimination claims are now barred by the doctrine of *res judicata*.

"Waiver is the intentional relinquishment of a known right or privilege." *Department of Health v. Donahue*, 690 P.2d 243, 247 (Colo.1984); *United States v. Leach*, 417 F.3d 1099, 1103-04 (10th Cir. 2005). Waiver can be established either through an express statement or it can be implied through a party's conduct. *Donahue*, 690 P.2d at 247. Similarly, as established by the Tenth Circuit in *Lewis*, "it is clear that our usual rules regarding waiver and estoppel apply to prevent a party from complaining about the enforceability of an arbitration agreement if he has fully participated in arbitration without any relevant objection." 500 F.3d at 1149. Application of the rule of waiver "is important to advance the goals of arbitration as an efficient method of dispute resolution for which parties may contract in advance." *Id.*

*Res judicata*, or claim preclusion, prevents a party from relitigating a claim that was or could have been the subject of a previously issued final judgment. *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005). Under Tenth Circuit law, claim preclusion

applies when three elements are satisfied: (1) a final judgment on the merits in an earlier action; (2) identity of the parties in the two suits; and (3) identity of the cause of action in both suits. *Id.* A party may avoid preclusion if that party did not have a full and fair opportunity to litigate the claim in the prior suit. *Id.* An arbitration award may have preclusive effect, but this may depend on the express terms of the arbitration agreement, the custom of the trade, or other exceptions or special interests to be protected. *Id.* at 831-32 (citations omitted).

Here, Plaintiff voluntarily decided to submit his discrimination and retaliation claims to binding arbitration. He thus gave up his right to pursue his claims in a judicial forum. It is unquestioned that Plaintiff's conduct in this regard was knowing, since he had previously filed a discrimination lawsuit rather than pursuing a grievance through the CBA mechanisms. In addition, it is now clear that the *Gardner-Denver* line of cases does not prohibit a finding of waiver in these circumstances. *Pyett* at *12 ("The decision to resolve [anti-discrimination] claims by way of arbitration instead of litigation does not waive the statutory right to be free from workplace . . . discrimination; it waives only the right to seek relief from a court in the first instance."). Similarly, all the elements of *res judicata* are met here because there was a final judgment on the merits in the arbitration, Plaintiff and the DNA were parties, and the cause of action in this case is the same as in the arbitration. Plaintiff's dissatisfaction with the result of the arbitration is not a basis for him to relitigate issues that have been tried and resolved. Accordingly, Plaintiff's claims are barred and this case should be dismissed.

    2.    <u>Discriminatory Demotion</u>

In addition, I agree with Defendant that Plaintiff cannot establish a prima facie case

of discrimination because he is either not medically qualified or should be judicially estopped from asserting that he was medically qualified for his position at the DNA. According to the ALJ's determination, Plaintiff is unable to do any of his past relevant work with the DNA and is unable to perform even sedentary work because of his affective impairments. SSA Decision, Ex. A-6 to DNA Motion for S.J. (doc no 74-8) at 4-5. Plaintiff does not dispute these factual findings. Rather, he claims in an affidavit that "to the best of his recollection" his severe depression occurred only after the June 11, 2005 incident involving his subordinate and the subsequent investigation and suspension. Ex. 6 to Plaintiff's Amended Response to Motion for S.J. (doc no114-4) at ¶ 8. I note that this conflicts not only with the ALJ's factual findings but also with the significant medical evidence on file. In these records, Plaintiff's self-reported history of depression indicates that his depression began before the June incident and correlates primarily to multiple head injuries and chronic pain. While I have no doubt that Plaintiff's problems with his job exacerbated his psychiatric difficulties, he has offered no other evidence to dispute that he had and continues to have the numerous medical conditions, including chronic pain, depression, and the other mental impairments described by the ALJ. Therefore, I conclude that no reasonable fact-finder could find that Plaintiff was medically qualified for the position from which he was demoted and he cannot establish a prima facie case of discrimination.

In the alternative, Plaintiff is judicially estopped from asserting that he is qualified for his previous position. "The doctrine of judicial estoppel is based upon protecting the integrity of the judicial system by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Bradford v. Wiggins*, 516 F.3d 1189, 1194 (10th Cir. 2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)). "Though

there is no precise formula, in order to determine whether to apply judicial estoppel, courts typically inquire as to whether: 1) a party's later position is clearly inconsistent with its earlier position; 2) a party has persuaded a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or second court was misled'; and 3) the party seeking to assert the inconsistent position would derive an unfair advantage if not estopped." *Id.*

Judicial estoppel may apply where, as here, a plaintiff's previous sworn statement in a Social Security application or proceeding asserts "total disability" but the plaintiff takes the position for the purposes of a discrimination lawsuit that the alleged impairment does not prevent him from working. *Cleveland v. Policy Mgmt Systems Corp.,* 526 U.S. 795 (1999). Recognizing the different nature of these proceedings and the fact that a person applying for disability benefits may not receive them, the United States Supreme Court has refused to adopt a *per se* rule of estoppel. *Id.* at 805. Rather, "[w]hen faced with a plaintiff's previous sworn statement asserting 'total disability' or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of [a discrimination] claim." *Id.* at 807. To defeat summary judgment, the explanation "must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless [perform the job]." *Id.*

Here, Plaintiff has taken clearly inconsistent positions regarding his ability to work in the job from which he was demoted. He persuaded the ALJ to accept his position that because of physical and mental impairments he was unable to work not only as a unit supervisor but also was unable to work any of his previous positions at the DNA. Finally,

Plaintiff obtained significant benefits from his assertion that he was completely disabled, including social security payments and company pension benefits. Allowing Plaintiff to retain all of these benefits while he pursues a claim based on a complete rejection of his prior position would give him an unfair advantage from which he should be estopped. Finally, applying *Cleveland*, Plaintiff offers no explanation to reconcile the apparent inconsistency between his sworn statement to the Social Security Administration that he is completely unable to work and his assertion here that he is qualified for his position. The nature of the impairments which he claimed preclude him from work, including affective disorders and chronic pain, are entirely inconsistent with the stressful and highly interactive nature of the unit supervisor position as described by both parties. He does not claim that his condition improved or otherwise provide a way for a reasonable juror to find that Plaintiff was both truthful in the SSA proceeding and capable of performing his job. Therefore, I agree that estoppel is appropriate.

Accordingly, it is ordered:

1. The Motion for Summary Judgment (doc no 74) filed by Defendant Denver Newspaper Agency LLP is granted. Plaintiff's Motion for Partial Summary Judgment (doc no 75) is denied. Summary judgment shall enter in favor of Defendant and against Plaintiff on all claims.
2. Defendant may have its costs.

DATED at Denver, Colorado, on May 4, 2009.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge