IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 07-cv-02097-CMA-KLM

JOHN MATHEWS,

    Plaintiff,

v.

DENVER NEWSPAPER AGENCY LLP,

    Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

This matter is before the Court on Defendant Denver Newspaper Agency's ("DNA") "Motion for Summary Judgment on Plaintiff's Retaliation Claim." (Doc. # 171.) For the following reasons, Defendant's Motion is denied.

## I. BACKGROUND[1]

### A.  FACTS

Plaintiff John Mathews, originally from southern India, began working for the Denver Post in 1983. In 1999, he attained the position of Unit Supervisor in the packaging center. (Doc. # 1-1, ¶ 8.) Plaintiff retained this position after the Rocky

---

[1] This case comes before the Court pursuant to the Tenth Circuit's order of remand in *Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199 (10th Cir. 2011), which affirmed in part and reversed in part an order granting summary judgment to Defendant by now-retired Judge Walker D. Miller. The Court will present only those facts relevant to Plaintiff's retaliatory demotion claim, which is the only claim that remains. *See id.* at 1212.

Mountain News entered into a joint operating agreement with the Denver Post, and formed the DNA. (*Id.,* ¶ 9.) Throughout his tenure at the Denver Post and at DNA, Plaintiff was a member of the Denver Mailers' Union No. 8 (the "Union"), and the terms of his employment were controlled by a collective bargaining agreement (the "CBA").

In June 2005, a female employee under Plaintiff's supervision complained that Plaintiff made inappropriate comments to her on the 11th and 12th of that month. One week later, the Union submitted a formal grievance against Plaintiff on behalf of the complaining employee. (Doc. # 171, ¶ 1.) On July 1, 2005, Plaintiff's supervisor, Katie McManus, informed Plaintiff that he would be demoted from his unit supervisor position, but that he would be allowed to remain working as a journeyman mailer. (Doc. # 172-4.) Later that day, Plaintiff obtained a doctor's certification that he was unable to return to work for medical reasons.[2] (Doc. # 171, ¶ 9.)

In response to a request by the Union for a list of the incidents or complaints that led to her decision to demote Plaintiff, Ms. McManus sent a memorandum on August 9, 2005, cataloguing the "numerous complaints" leading to Plaintiff's demotion, including complaints that Plaintiff "did not treat women with respect," that he made "inappropriate/ vulgar comments" to a female employee, that he twice left before the end of his shift

---

[2] Plaintiff eventually filed an application for disability benefits with the Social Security Administration ("SSA"), alleging a disability onset date beginning on June 11, 2005 (the date he allegedly made inappropriate comments to the female employee under his supervision). On August 26, 2007, the SSA awarded disability benefits to Plaintiff, finding that he had been under a disability, as defined in the Social Security Act, from June 11, 2005 through the date of the decision. (Doc. # 173-1.)

without permission, and that he told a female employee she "did not have a brain."[3] (Doc. # 178-6.)

Prior to his demotion, Plaintiff had sent an e-mail message to Ms. McManus, dated May 31, 2005, conveying his belief that, "the training and assignment of manager and/or unit supervisor roles are biased. If this bias is based on race, color, and national original it should be reviewed." (Doc. # 178-5.) Plaintiff also wrote a letter to Ms. McManus, dated June 15, 2005, but not sent until some later date,[4] alleging that "workers of color" were treated differently than Caucasian unit supervisors. (Doc. # 178-4.)

**B.     PROCEDURAL HISTORY**

On July 4, 2005, Plaintiff filed a grievance against Defendant with the Union, alleging employment discrimination. (Doc. # 173-2.) Plaintiff submitted his grievance to arbitration as provided by the CBA, and an arbitration proceeding was held over four days in early 2006. (Doc. # 172-5.) Although the arbitrator found that Defendant did not demote Plaintiff because of his national origin, the "parties presented no evidence on [Plaintiff's] retaliation claim at arbitration, and the arbitral decision makes no mention of it." *Mathews*, 649 F.3d at 1203 n.2.

Following the arbitrator's adverse ruling, Plaintiff initiated this action in Colorado state court, asserting statutory claims under Title VII and 42 U.S.C. § 1981. Defendant removed the action to the District of Colorado. (Doc. # 1.) After discovery concluded,

---

[3] Plaintiff denies that these incidents occurred or that they were as serious as portrayed.
[4] The parties dispute when this letter was received, if at all, by Ms. McManus. (Doc. ## 178 at 4; 185 at 3.)

both parties moved for summary judgment. On May 4, 2009, Judge Miller granted summary judgment on both the discrimination claim and the retaliation claim in favor of Defendant. (Doc. # 147.)

After Judge Miller issued his summary judgment order, Plaintiff appealed to the Tenth Circuit. Although the Tenth Circuit affirmed summary judgment on Plaintiff's discriminatory demotion claim, the Circuit reversed Judge Miller's grant of summary judgment on Plaintiff's retaliatory demotion claim. *See id.* at 1212. In so doing, the Circuit found that Plaintiff had established a *prima facie* case of retaliatory demotion and "ha[d] presented some evidence" of pretext. *See id.* at 1211. After the case was remanded to the district court for further proceedings, it was reassigned to this Court on August 2, 2011, following Judge Miller assuming inactive senior judge status. (Doc. # 182.)

On June 13, 2011, Defendant filed the instant "Motion for Summary Judgment on Plaintiff's Retaliation Claim." (Doc. # 171.) Plaintiff responded on July 22, 2011, and Defendant replied on August 8, 2011. (Doc. ## 178, 185).

## II. STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S 317, 323 (1986). Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure of materials on file, and any affidavits show that

there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252.

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). After the movant has met its initial burden, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of the claim such that a reasonable jury could find in its favor. *See Anderson*, 477 U.S. at 248; S*imms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).

The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to the

nonmovant. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Although the nonmoving party need not present evidence "in a *form* that would be admissible at trial," *Celotex*, 477 U.S. at 324, "the content or substance of the evidence must be admissible." *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995). However, conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F .3d 869, 875 (10th Cir. 2004). Furthermore, "[h]earsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because 'a third party's description of a witness' supposed testimony is not suitable grist for the summary judgment mill.'" *Adams v. Am. Guarantee and Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (quoting *Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1268 (10th Cir. 1998)).

### III. ANALYSIS

Plaintiff alleges that Defendant unlawfully retaliated against him in violation of Title VII and § 1981 by demoting him after he complained about racial discrimination.[5] In this case, Plaintiff attempts to prove a violation of these statutes through circumstantial evidence. Thus, the Court applies the familiar *McDonnell Douglas* burden-shifting analysis to Plaintiff's claims. *See McDonell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

---

[5] Because the standards for proving a violation of Title VII or 42 U.S.C. § 1981 are the same, *see Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011), the Court's analysis applies equally to both claims.

Under the *McDonnell Douglas* framework, Plaintiff has the initial burden to establish a *prima facie* case of retaliation by Defendant. See *Mathews*, 649 F.3d at 1210. If Plaintiff is able to establish a *prima facie* case of retaliatory demotion, the burden shifts to Defendant to articulate "some legitimate, non-discriminatory reason for [Plaintiff's] demotion." *Id.* at 1211. Finally, if Defendant articulates such a reason, the final burden reverts to Plaintiff, "who must point to some admissible evidence showing that [Defendant's] proffered explanation is mere pretext." *Id.*

Defendant argues that Plaintiff cannot establish a *prima facie* claim of retaliatory demotion because Plaintiff cannot show that he was qualified to be a unit supervisor. Additionally, Defendant argues that Plaintiff cannot meet his burden of showing that Defendant's proffered non-retaliatory reason for Plaintiff's demotion – namely, his poor performance as a Unit Supervisor – is pretext. (Doc. # 171 at 7.)

### A.    PLAINTIFF'S *PRIMA FACIE* CASE OF RETALIATION

To establish a *prima facie* case of retaliatory demotion, Plaintiff "must make a showing that (i) he was engaged in protected activity, (ii) he suffered an adverse employment action, and (iii) there was a causal connection between the protected activity and the adverse action." *Mathews*, 649 F.3d at 1210 (citing *Timmerman v. U.S. Bank*, 483 F.3d 1106, 1122-23 (10th Cir. 2007)). In *Mathews*, the Tenth Circuit found that Plaintiff had established a *prima facie* case of retaliatory demotion. *See id.* at 1211. Defendant, however, argues that the Court should also require Plaintiff to show that he was qualified for the position from which he was demoted.

It is well-established that a plaintiff must show that he was qualified for the position at issue in order to establish a *prima facie* case of **discriminatory** demotion. *See, e.g.*, *Jones v. Denver Post Corp.*, 203 F.3d 748, 753 (10th Cir. 2000) (plaintiff must show he was qualified for the position from which he was demoted); *Mathews*, 649 F.3d at 1208. However, as Defendant concedes, the Tenth Circuit has never held that job qualification is a requirement to establish a *prima facie* case of **retaliation**. *See Mathews*, 649 F.3d at 1211 n.5. Nevertheless, Defendant argues that "it logically follows . . . that [retaliation] claims also require *prima facie* proof of qualifications." (Doc. # 171 at 9.) The Court disagrees.

Although the *McDonnell Douglas* burden-shifting framework applies to both discrimination and retaliation claims, what a plaintiff must prove to establish a *prima facie* case for each type of claim differs. For example, to establish a *prima facie* case of retaliation a plaintiff must show that he was engaged in protected activity, whereas this showing is not required in a discrimination claim. Similarly, a plaintiff must show that he is a member of a protected class to establish a *prima facie* case of discrimination, which is not required of a plaintiff alleging retaliation. Therefore, the fact that the Tenth Circuit has found job qualification to be an element of a discrimination claim does not necessarily mean that job qualification is, or should be, an element of a retaliation claim. Upon consideration, the Court concludes that imposing job qualification as a requisite element for a plaintiff to establish a *prima facie* case of retaliation would conflict with the purpose of the statutory anti-retaliation provisions.

The principal goal of Title VII is to eliminate employment discrimination on the basis of race, color, religion, sex, or national origin. *Taken v. Okla. Corp. Comm'n*, 125 F.3d 1366, 1369 (10th Cir. 1997). In the context of a discrimination claim, the *prima facie* showing is used to "eliminate[] the most common nondiscriminatory reasons for the plaintiff's" challenged adverse action. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The Tenth Circuit has identified a plaintiff's lack of qualification as one of the most common nondiscriminatory reasons for an adverse employment action. *See Barone v. United Airlines, Inc.*, 355 F. App'x 169, 182 (10th Cir. 2009). Thus, it makes sense that a plaintiff would need to show that he was qualified for the position at issue in order to establish a *prima facie* case of discrimination.

Title VII's anti-retaliation provision serves a different purpose altogether. As noted by the Supreme Court, "Title VII depends for its enforcement upon the cooperation of employees who are willing to file complaints and act as witnesses." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). Thus, Title VII's substantive provision is not "coterminous" with its anti-retaliation provision, and "[t]he scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Id*. In other words, the anti-retaliation provision protects employees that complain about discrimination, rather than protecting employees from discrimination itself. Imposing a requirement that a plaintiff be qualified for a job in order to establish a *prima facie* case of retaliation would undercut the purpose of Title VII's anti-retaliation provision because it could deter employees

from filing complaints.⁶ Such a requirement, although sensible in the context of a discrimination claim, is not appropriate in the context of a retaliation claim.

Furthermore, as Plaintiff points out, the three-part standard applied in *Mathews* for establishing a *prima facie* case of retaliation has been the law in the Tenth Circuit for at least three decades. (Doc. # 178 at 19) (citing *e.g.*, *Duncan v. Mgr., Dep't of Safety*, 397 F.3d 1300, 1314 (10th Cir. 2005); *Burrus v. United Tel. Co. of Kan. Inc.*, 683 F.2d 339, 343 (10th Cir. 1982)). Given the distinctions between retaliation and discrimination claims, as set forth above, the Court will not disturb this long line of precedent.

In its motion, Defendant primarily relies on decisions from other circuits that have, according to Defendant, recognized proof of qualification as a fourth element to establish a *prima facie* case of retaliation. Upon review of the plethora of cases cited by Defendant, only two appear to actually recognize proof of qualification as a requisite element. In *Volovsek v. Wis. Dep't of Agric., Trade & Consumer Prot.*, the Seventh Circuit stated that qualification was an element of a *prima facie* case of retaliation; however, it did so without any analysis. *See* 344 F.3d 680, 692 (7th Cir. 2003). In *Holtzclaw v. DSC Commc'ns Corp.*, the Fifth Circuit held that a plaintiff who sought re-employment under the Age Discrimination in Employment Act ("ADEA") was required to prove that he was qualified for his position. *See* 255 F.3d 254, 257 (5th Cir. 2001).

---

⁶ The Court's conclusion that job qualification is not an element of a *prima facie* showing for a retaliation claim does not mean that evidence of a plaintiff's lack of qualification is necessarily irrelevant. If, for example, a defendant asserts that it demoted a plaintiff because of his lack of qualification, evidence that a plaintiff was unqualified would be highly relevant to show that the defendant's proffered reason was not pretext. That is not the situation in this case because Defendant asserts that it demoted Plaintiff due to his poor performance as a Unit Supervisor. (Doc. # 171 at 12.)

In so doing, *Holtzclaw* found that it would be "illogical and inconsistent" to require qualification in a discrimination case but not in a retaliation case.  *See id.* at 260.

The Court finds *Holtzclaw* and *Volovsek* unpersuasive in light of the Supreme Court's analysis in *White*, which explains that retaliation claims serve a different purpose than discrimination claims.  Furthermore, the Court notes that the Fifth Circuit declined to extend *Holtzclaw* in *EEOC v. Dunbar Diagnostic Servs., Inc.*, 92 F. App'x 83, 85 (5th Cir. 2004), stating that "whether [the plaintiff] was terminated because she was not 'qualified' or for some impermissible reason – the central issue of the retaliation claim – remains an issue for the trier of fact."  The Court also observes that the Fifth Circuit has continued to apply the traditional three-prong *prima facie* test to retaliation claims in post-*Holtzclaw* decisions.  *See, e.g.*, *Walker v. Geithner*, 400 F. App'x 914, 917 (5th Cir. 2010); *Robinson v. Blue Cross & Blue Shield of La.*, 75 F. App'x 304, 306 (5th Cir. 2003).  Thus, it appears that only the Seventh Circuit requires plaintiffs to show that they are qualified for the position at issue to establish a *prima facie* case of retaliation.

Although Defendant cites to decisions from other circuits, none stand for the proposition that a plaintiff must show that he was qualified for the position at issue in order to establish a *prima facie* case of retaliation.  Indeed, many of the cases cited by Defendant have employed the three-prong *prima facie* test for retaliation claims without importing a requirement that the plaintiff be qualified.   For example, in *Surrell v. Cal. Water Serv. Co.*, the Ninth Circuit applied the traditional three-part *prima facie* test for

11

retaliation claims. *See* 518 F.3d 1097, 1108 (9th Cir. 2008) ("To establish a prima facie case of retaliation, a plaintiff must prove (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two"); *Robinson*, 75 F. App'x at 306 (same). Other cases cited by Defendant discuss proof of qualifications in their analysis of retaliatory motive or pretext, but do not enumerate it as a required element to establish a *prima facie* case of retaliation. *See Lambert v. Genesee Hosp.*, 10 F.3d 46, 57 (2d Cir. 1993), *abrogated on other grounds by Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1331 (2011); *Barton v. U.S. Postal Serv.*, No. 09-13750, 2011 WL 589076, at *9 (E.D. Mich. Feb. 10, 2011).

In any event, none of the decisions cited by Defendant are binding on this Court. For the reasons set forth above, the Court finds no reason to require Plaintiff to show that he was qualified for his Unit Supervisor position in order to establish his *prima facie* case of retaliation.

**B.    PRETEXT**

Defendant also argues that the Court should grant summary judgment because Plaintiff is unable to show that Defendant's stated reason for demoting Plaintiff – "his poor performance as a supervisor" – was pretext.[7] In response, Plaintiff asserts that he

---

[7] In *Mathews*, the Tenth Circuit found that "[Plaintiff] has presented some evidence that other employees were not demoted for their objectionable conduct. Such evidence can, in some circumstances, provide a sufficient showing that an employer's proffered explanation is pretextual to avoid summary judgment." 649 F.3d at 1211. The parties appear to agree that *Mathews* did not find that Plaintiff had necessarily provided sufficient evidence to show pretext, only that it would not find his pretext evidence *per se* insufficient based on the arbitrator's ruling against him. *See id.* at 1211-1212. The Court agrees that *Mathews* left open the issue of whether Plaintiff has presented sufficient evidence of pretext.

has presented evidence that "the same behavior [that led to his demotion] was engaged in" by other employees who had not complained of discrimination and who were not demoted. (Doc. # 178 at 25–26.)

A showing of pretext may be based on "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's claimed legitimate, non-discriminatory reason such that a rational trier of fact could find the reason unworthy of belief." *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1143 (10th Cir. 2009) (quoting *Timmerman*, 483 F.3d at 1113). A plaintiff may show that the employer's stated reason is pretextual in a variety of ways, one of which is by providing evidence that he was "treated differently from other similarly-situated employees who violated work rules of comparable seriousness." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

Construing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has provided sufficient evidence to support his assertion that Defendant's proffered reasons for demoting him were pretext.[8] For example, various employees filed numerous complaints against one unit supervisor for treating employees in a "humiliating and degrading manner," yelling at and directing profane language to employees, and grabbing an employee by the arm and shaking her. (Doc. # 178,

---

[8] In its Reply, Defendant attempts to dismiss Plaintiff's evidence of pretext by making a blanket assertion that "[a]lleged facts 10 through 117 rely on numerous hearsay allegations unsupported by admissible evidence." (Doc. # 185 at 4.) This is the extent of Defendant's explanation as to why every factual assertion made by Plaintiff is hearsay. Although some of the evidence presented by Plaintiff is not suitable for consideration on a summary judgment motion, some of it, such as the deposition testimony of Ms. McManus, is admissible.

¶¶ 23-35.)  Ms. McManus testified that she gave that unit supervisor a written warning, but did not demote the unit supervisor.  (Doc. # 178-7 at 387:6-12.)  Another unit supervisor was accused by employees of yelling at them, harassing them, and making derogatory remarks about Russian immigrant employees.  In fact, twenty-three DNA employees signed a petition alleging that the unit supervisor discriminated against Russian immigrant employees, calling them "lazy" and incapable of performing their jobs.  (Doc. # 178-44.)   Ms. McManus did not demote this supervisor either.  Notably, neither of these unit supervisors (or any other unit supervisors that acted similarly to Plaintiff) voiced opposition to discrimination, as Plaintiff did.

Finally, Defendant argues that the Court should accord "great weight" to the arbitrator's determination that Plaintiff had not shown Defendant's actions were pretext. (Doc. # 171 at 16-17.)  In *Mathews*, the Tenth Circuit instructed that courts should "accord weight to prior arbitral decisions on a case-by-case basis."  649 F.3d at 1212. Although Plaintiff does not appear to dispute the fairness of the arbitrator's decision or the competence of the arbitrator, the arbitrator did not consider Plaintiff's retaliation claim.  (*See* Doc. # 178 at 3; Doc. # 172-5).  Given Defendant's arguably disparate treatment of Plaintiff, as compared to other unit supervisors, the Court finds that this case is one that should be submitted to a jury.  Plaintiff has shown that there exists a genuine dispute of material fact regarding whether Ms. McManus "honestly believed" Plaintiff was unsuited to be a unit supervisor "and acted in good faith upon those beliefs."  *Stover v. Martinez,* 382 F.3d 1064, 1076 (10th Cir. 2004).

## IV. **CONCLUSION**

Based on the foregoing, it is ORDERED that Defendant's "Motion for Summary Judgment on Plaintiff's Retaliation Claim" (Doc. # 171) is DENIED.  It is

FURTHER ORDERED that United States Magistrate Judge Kristen L. Mix shall hold a Final Pretrial Conference in this matter.  The parties are directed to contact Magistrate Judge Mix to schedule the Conference by calling her Chambers on a single line at 303-335-2770, on or before February 1, 2012.

DATED:  January   27  , 2012

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge